IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LEANDRO GOMEZ, III, | ) CIVIL NO. 08-00225 JMS |
|  | ) CR. NO. 05-00300-01 JMS |
| Petitioner, | ) |
|  | ) ORDER DENYING GOMEZ' |
| vs. | ) MOTION TO VACATE, SET ASIDE, |
|  | ) OR CORRECT SENTENCE UNDER |
| UNITED STATES OF AMERICA, | ) 28 U.S.C. § 2255 |
|  | ) |
| Respondent. | ) |
| _____ | ) |

**ORDER DENYING GOMEZ' MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**

Petitioner Leandro Gomez, III ("Gomez") filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on May 15, 2008 ("§ 2255 Motion"). The United States filed a memorandum in opposition on July 1, 2008. In a memorandum in support of his § 2255 Motion, Gomez claims that his attorney's performance fell below the standard of competence required by the Sixth Amendment based on his failure to object at sentencing to a role in the offense upward adjustment under the United States Sentencing Guidelines ("USSG"). He further alleges that had he been aware that his counsel would be so deficient in his performance, he may not have entered a plea of guilty. For the following reasons, the Court DENIES Gomez' § 2255 Motion.

# I. BACKGROUND

## A. The Offense Conduct

On July 28, 2005, Gomez, along with nine co-defendants, was charged in a four-count First Superseding Indictment with conspiracy to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers from a time unknown until July 21, 2005 (count 1); possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers on or about May 13, 2005 (count 2); possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers on or about May 28, 2005 (count 3); and possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers on or about June 9, 2005 (count 4).

On June 23, 2006, Gomez entered a plea of guilty to count 1 of the First Superseding Indictment in return for the dismissal of counts 2, 3, and 4 after sentencing. In paragraph 9 of the Memorandum of Plea Agreement, Gomez admitted to the following facts relevant to his § 2255 Motion: Gomez, a resident

of Las Vegas, Nevada, was co-defendant Nathaniel Russell's primary source of methamphetamine until July, 2005. Russell in turn was a major distributor of methamphetamine on Maui. Gomez, assisted by co-defendants Timothy Sullivan and Gilbert Gomez, had either delivered methamphetamine to Russell's couriers in Las Vegas for transportation to Maui or mailed the methamphetamine to Maui. Gilbert Gomez assisted Gomez by delivering the methamphetamine to Russell's couriers at the Las Vegas airport, obtaining payment from Russell's couriers, and then providing the currency to Gomez. For example, on May 26, 2005, in order to purchase seven pounds of methamphetamine, co-defendant Reed Aken delivered $66,000 to Gilbert Gomez, who then provided the currency to Gomez. Aken then obtained two pounds of methamphetamine from Gomez and Gilbert Gomez for transportation to Maui.

**B.     Hearing on Gomez' Guilty Plea**

Prior to and during his change of plea proceeding ("change of plea"), Gomez was represented by retained counsel Kenneth Elliot of Vista, California and Honolulu attorney Benjamin Ignacio.[1] The Memorandum of Plea Agreement contained several stipulations, including that "Defendant also agrees that he is an

---

[1] Elliot was also admitted pro hac vice, and Ignacio served as the associated counsel pursuant to Local Rule 83.1(e).

organizer, leader, manager, or supervisor in a criminal activity within the meaning of [USSG §] 3B1.1(c), for which a two-level increase must be assessed." Plea Agreement ¶ 11c.

During the January 23, 2006 change of plea, Gomez affirmed that he read and discussed the First Superseding Indictment and the Plea Agreement with his counsel. Jan. 23, 2006 Tr. at 6. Gomez confirmed that he had sufficient time to consider his guilty plea, and that he was satisfied with both Elliot and Ignacio. *Id*. He further confirmed that no promises or assurances were made to him in an effort to have him enter a plea of guilty other than what is set forth in the plea agreement. *Id*. at 6-7. When asked specifically about the plea agreement, Gomez stated that he discussed it with Elliot and that Elliot answered all of his questions regarding the document. *Id*. at 11. Further, the Assistant United States Attorney described the essential terms of the plea agreement, stating in part that Gomez agreed that he was a "leader/organizer for purposes of a two level increase in the base offense level." *Id*. at 12. Gomez confirmed that he understood this and other statements made by the Assistant United States Attorney. *Id*. at 14. When questioned by the court concerning the offense, Gomez explained that he was Russell's supplier of methamphetamine, and that he used Sullivan and Gilbert Gomez to assist him in that distribution. *Id*. at 25-28.

**C.     Sentencing**

The Presentence Report ("PSR"), consistent with the Plea Agreement's stipulation, applied a two-level upward adjustment for role in the offense pursuant to USSG § 3B1.1(c), stating that Gomez "made arrangements for others to transport 'ice' to Hawaii. In addition, the defendant directed others in receiving money for drug purchases and delivering 'ice.'" PSR ¶ 64.

Gomez was sentenced on October 30, 2006. When questioned by the court, both Elliot and Gomez affirmed that they "had a full opportunity to read, review, and discuss the presentence report along with any addendum and then to make any objections you wish to that report. . . ." Oct. 30, 2006 Tr. at 2. After determining that neither the government nor defense had any objections to the PSR, the court adopted its factual findings and the conclusions as to the applicable guidelines. *Id*. at 4. Based on the facts presented, this court stated that Gomez was "at the top of this conspiracy" and was "the lead defendant in this case. . . ." *Id*. at 20. Taking into consideration the guidelines, the 18 U.S.C. § 3553(a) factors, and the government's motion for downward departure based on Gomez' substantial assistance, the court imposed a sentence of 284 months incarceration

followed by five years of supervised release. *Id*. at 23-25.[2]

## II. ANALYSIS

### A. Section 2255's Legal Framework

The court's review of Gomez' motion is governed by 28 U.S.C. § 2255:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The Sixth Amendment guarantees the right to effective assistance of counsel at all critical stages of a criminal proceeding, including sentencing. *United States v. Gonzalez*, 113 F.3d 1026, 1029 (9th Cir. 1997). A petitioner demonstrates ineffective assistance of counsel by showing that: (1) his counsel's performance was objectively deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668 (1984).

---

[2] Pursuant to *Anders v. California*, 386 U.S. 738 (1967), Gomez' new appellate counsel filed a brief with the Ninth Circuit stating that he found no meritorious issues for review. After performing an independent review of the record, the Ninth Circuit affirmed the conviction and dismissed the appeal based on a valid appeal waiver. *United States v. Gomez*, 249 Fed. Appx. 566 (9th Cir. 2007).

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

Even after showing that counsel's performance is deficient, in order to constitute ineffective assistance under the constitution, the petitioner must show that such deficiency was prejudicial to the defense. *Id.* at 692. Stated differently, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

A court should hold an evidentiary hearing on a § 2255 motion "unless the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. In the Ninth Circuit, this standard requires an evidentiary hearing where "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984). "Thus, the district

court's decision that [petitioner's] ineffective assistance claim did not warrant an evidentiary hearing was correct if his allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (*citing Schaflander*, 743 F.2d at 717) (internal quotation signals omitted).[3] Conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993). After a careful review of the record, the court finds that it is appropriate to rule on the motion without an evidentiary hearing.

**B.      Elliot Did Not Provide Ineffective Assistance of Counsel**

Gomez first claims that Elliot told him that if he entered a plea of guilty, the government would agree to a two-level upward adjustment pursuant to USSG § 3B1.1(c),[4] rather than a four-level upward adjustment pursuant to USSG § 3B1.1(a)[5] (which Gomez refers to as the "Kingpin Leadership role"). According

---

[3] Further, although an evidentiary hearing is normally required when a petitioner's allegations are based on facts outside of the record, no hearing is required when the petitioner's credibility can be "conclusively decided on the basis of documentary testimony and evidence in the record." *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988); *see also Frazer v. United States*, 18 F.3d 778 (9th Cir. 1994).

[4] Pursuant to USSG § 3B1.1(c), the court increases the base offense level by two levels "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity. . . ."

[5] Pursuant to USSG § 3B1.1(a), the court increases the base offense level by four levels
(continued...)

to Gomez, Elliot claimed that at sentencing he would argue that no role in the offense adjustment should be applied, but that he failed to do so.  Gomez' argument fails for several reasons.

First, Gomez stipulated in paragraph 11(c) of the Memorandum of Plea Agreement that he would receive the two-level role in the offense adjustment: "Defendant also agrees that he is an organizer, leader, manager, or supervisor in a criminal activity within the meaning of [USSG §] 3B1.1(c), for which a two-level increase must be assessed."  He had discussed the Memorandum of Plea Agreement with Elliot and understood it.  Further, during the change of plea, Gomez stated that he understood that he agreed that he was a "leader/organizer for purposes of a two level increase in the base offense level."  Jan. 23, 2006 Tr. at 12.  Thus, at the time Gomez entered his plea of guilty he clearly understood that he agreed that he would receive the two-level upward adjustment under USSG § 3B1.1(c).

Second, given this agreement with the government -- which Gomez clearly understood and endorsed -- Elliot had no basis to argue otherwise at sentencing.  *See United States v. Hernandez-Hernandez*, 431 F.3d 1212, 1219 (9th

---

[5](...continued)
"[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."

Cir. 2005) ("There is no authority to support the proposition that when [defendant's] attorney stipulated to the factual basis supporting the plea agreement the defendant was not bound by the facts contained in that stipulation.  In fact, we have repeatedly held that criminal defendants are bound by the admissions of fact made by their counsel in their presence and with their authority.").

Third, any argument that Elliot could have made against the role in the offense adjustment would have been futile.  Gomez was quite clearly an organizer, leader, manager, or supervisor in this conspiracy.  He was the lead defendant, responsible for supplying the methamphetamine to Nathan Russell's drug trafficking organization on Maui.  In this role, Gomez directed the activities of at least two individuals, Timothy Sullivan and Gilbert Gomez.  Both, on Gomez' behalf, delivered methamphetamine to Russell's couriers for transportation to Maui.  Gilbert Gomez also received currency from Russell's organization for the purchase of drugs and provided the currency to Gomez.  These facts unquestionably demonstrate that Gomez maintained a leadership role in the conspiracy.  *See United States v. Maldonado*, 215 F.3d 1046, 1050 (9th Cir. 2000) ("A single incident of persons acting under a defendant's direction is sufficient evidence to support a two-level role enhancement.").  In short, Gomez' claim that Elliot's performance was deficient, even if true, did not prejudice

Gomez.  Even absent a stipulation, based on the facts presented in the PSR, at a minimum the court would have applied the same two-level role in the offense adjustment.[6]  Differently stated, Gomez cannot show the outcome (the USSG calculations and the ultimate sentence imposed) would have been different had his counsel argued against the role in the offense upward adjustment at sentencing.

    Gomez next claims that had he been aware that Elliot would fail to argue against the role in offense adjustment at sentencing, he "may not have agreed to entering a guilty plea and quite possibly would have requested that this Honorable United States District Court appoint new counsel."  Pet'r Mem. in Supp. at 4.  This argument likewise fails.

    In fact, Gomez was aware that Elliot could not argue against the role in the offense conduct upward adjustment.  The Memorandum of Plea Agreement at paragraph 11(c) clearly states that Gomez "agrees that he is an organizer, leader, manager, or supervisor. . . ."  When he entered his change of plea, he stated that he had sufficient time to consider the plea, he was satisfied with Elliot and Ignacio, no promises or assurances were made to him in an effort to get him to enter his

---

[6] Gomez does not argue that Elliot was deficient by stipulating to the two-level enhancement.  Such an argument would certainly fail.  Not only was the two-level adjustment supported by the evidence, but in fact the court would have acted within its discretion to apply a three or four level upward adjustment based on Gomez' role in this drug trafficking conspiracy.

plea other than what is set forth in the Memorandum of Plea Agreement, and he understood that he agreed to a two-level enhancement for being a "leader/organizer."  Prior to sentencing being imposed, Gomez affirmed under oath that he had read the PSR and made all objections in writing.  Given this background, Gomez cannot now argue that he may not have entered a plea of guilty -- or would have sought new counsel -- had he known that Elliot would fail to argue against the role adjustment at sentencing.

### III.  CONCLUSION

For the foregoing reasons, the court DENIES Gomez' Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 2, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Leandro Gomez, III v. United States*, CIV. NO. 08-00225 JMS, CR. NO. 05-00300-01 JMS, Order Denying Gomez' Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255